**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| (1)   JERROD D. HUEY, | ) | |
|                    Plaintiff, | ) | |
| | ) | |
| vs. | ) | 4:20-cv-00021-CVE-FHM |
| | ) | |
| (1)   STEVE KUNZWEILER, | ) | |
| District Attorney for Tulsa County, and | ) | |
| State of Oklahoma; | ) | |
|                    Defendant. | ) | |

**CIVIL RIGHTS COMPLAINT PURSUANT TO 42 U.S.C. § 1983**

COMES NOW the Plaintiff, JERROD D. HUEY, ODOC # 276869, a State prisoner, through his attorney of record, Debra K. Hampton, and submits this Civil Rights Complaint against the above-named Defendant. The Plaintiff alleges and states:

**I.   JURISDICTION AND VENUE**

1. The cause of this action is brought under 42 U.S.C. § 1983 with this Court having jurisdiction under 42 U.S.C. § 1331 and 28 U.S.C. §§ 1343. Jurisdiction is also asserted under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, et seq.

2. This action does not involve diversity jurisdiction.

3. Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

**II.   PREVIOUS FEDERAL CIVIL ACTIONS OR APPEALS**

The Plaintiff has not filed any other actions in Federal Court for a Civil Rights Complaint under § 1983 addressing these issues. The Plaintiff has filed a civil action seeking habeas relief in this Court, Case No. 14-CV-344-TCK-PJC.

1

### III. THE PARTIES TO THIS COMPLAINT:

A. The Plaintiff, JERROD D. HUEY, ODOC # 276869, is a state prisoner, who resides at the North Fork Correctional Facility, Sayre, OK 73662.

B. The Defendant, STEVE KUNZWEILER, District Attorney for Tulsa County, State of Oklahoma, was working under color of State law when the allegations arose. *West v. Atkins*, 487 U.S. 42 (1988). The Defendant is a resident of the State of Oklahoma.

### IV. FACTS ENTITLING PLAINTIFF TO RELIEF[1]

1. The Plaintiff is seeking an injunction requiring the Defendant to release the chain of custody of biological material to an accredited laboratory in San Antonio, Texas, that was secured in an investigation for DNA testing. Plaintiff states that Oklahoma's Post-Conviction DNA testing statute is unconstitutional providing a constitutional inadequacy to access biological material to prove Plaintiff's innocence through new evidence.

2. The Plaintiff was charged by information in the District Court of Tulsa County Case No. CF-2011-1026, and convicted of one count of Murder in the First Degree (Count 1) in violation of 21 O.S. 701.7 (2011) one count of Unlawful Possession of a firearm by a Felon (Count 4) in violation of 21 OS. 1283 (2011). Plaintiff meets the statutory requirement to seek DNA testing under 22 O.S. 2013 § 1373.2 et seq.

3. The jury fixed punishment at life imprisonment with the possibility of parole on (Count 1) and five years' imprisonment on (Count 2). The district court ordered the sentences to be served consecutively. See 22 O.S. 2013 § 1373.2 (A) *infra*. Plaintiff put the state on Notice he was innocent of the underlying offense for which he was convicted. Plaintiff timely appealed to

---

[1] Fed. R. Civ. P. 8 (a)(2) only requires a short and plain statement of the claim showing that the pleader is entitled to relief;

the Oklahoma Court of Criminal Appeals (OCCA) in Case No. F-2012-189. The appeal was affirmed on August 2, 2013. *Huey v. State*, (not for publication).

4. The Plaintiff maintains his plea of not guilty and states he is factually innocent of the offense he was convicted. The DNA testing of biological evidence that Plaintiff seeks would conclusively establish by ***"new evidence"*** that he is factually innocent. The Plaintiff seeks to have the following evidence tested which will reveal the identity of the individual responsible for the offense, which is not the Plaintiff.

5. **Description of Evidence Sought for DNA testing:**

   a) Item # 1, held by Tulsa Police Department under Receipt No. BF2374, a firearm (.380 caliber handgun, Kel-Tec) found in Plaintiff's possession.

   b) Item # 2, under Receipt No. BF2374, Winchester hollow-point jacket.

   c) Item # 3, under Receipt No. BF2374, Black .380 magazine, Kel-Tec, located in item one.

   d) Item # 8, under Receipt No. BF2373 Blood swab, taken from inside van on the front passenger door.

   e) Item # 24, under Receipt No. BF2373, Blood DNA, from OCME (control sample of decedent)

6. Detective Charles Kevin Hill first observed Johnny Dean, deceased, lying face down next to a driveway near East 52nd and Rockford on March 14, 2011. (Tr. at 286). At the corner of the intersection, Hill observed a minivan left running. (Tr. at 287). The passenger side door was left slightly ajar. (Tr. at 290). At the interior from the passenger side, Hill observed displaced glass from the passenger side window, what he believed to be some dispersed blood on the interior of the door panel. (Tr. at 293). Going back through the crime scene, Hill discovered two .380 caliber cartridge casing in the immediate area where the van was located the evening

before. (Tr. at 296). Plaintiff states that any DNA collected from the firearm found on his person would be the same DNA as the blood collected from the passenger door of the decedent's van. See [Exhibit 1] (photographs from the passenger side of decedent's vehicle where blood evidence had been collected).

### Suppression of Evidence Related to Scientific Testing.

7. A willful suppression of evidence occurred regarding the analysis of blood evidence when the state produced no STR frequency tables or copies of any allelic frequency tables relied upon in making statistical estimates. The State also provided no Mitochondrial Data or the Data Interpretation Guidelines nor did the State supply the mitochondrial DNA statistical references for allowing an independent expert to analyze the laboratory results alleged to have been determined. Plaintiff states under 22 O.S. 2013 § 1373.1 (3) the State of Oklahoma willfully suppressed evidence defined as a *"Document"* or *"documents"* where the language of the statute provides:

> *"Document" or "documents"* means any tangible thing upon which any expression, communication or representation has been recorded by any means and includes any writing, electronic writing, recording, drawing, map, graph or chart, photograph and other data compilation in the actual or constructive possession, custody, care or control of the government which pertains directly or indirectly to any matter relevant to the issues in a criminal case; and

8. The State provided no Report of matches between samples in this case (reference and evidentiary) and any laboratory personnel or profiles prepared by the laboratory thus also amounting to a suppression of evidence potentially favorable to Plaintiff.

9. The State provided no documents regarding CODIS/NDIS uploads, keyboard searches, and related reports.

10. The State provided no documents regarding state/county/agency or other local database uploads and related reports.

**Evidence List Demonstrating the Chain of Custody is Sufficient for DNA Testing.**

11. This is a list of evidence held by Tulsa Police Department under **Receipt No. BF2373**.

    1. U.S. Currency, $22 from Dean's wallet
    2. Medications, eight different types of medications in a bottle labeled Reginald Wells
    3. One S&W Revolver, with five rounds, one empty not behind the hammer.
    4. Cartridges, .380 caliber
    5. Miscellaneous items recovered from victim, Cannex, bottle, black bag
    6. Wallet containing miscellaneous items, recovered by EMSA
    7. Bullet fragments recovered from inside of van behind passenger's front seat
    8. Blood swab, taken from inside van on the front passenger door
    9. Cellphone, recovered from Dean's left front jacket pocket
    10. Cellphone, recovered from dash of van
    11. Cellphone, recovered from floorboard between front seats of van
    12. Cartridge casing, stamped Winchester 380 auto from front yard of 5142 N. Rockford Ave., marked by ID tent no. 1 by Campbell
    13. Cartridge casing, stamped Winchester 380 auto from front yard of 5142 N. Rockford Ave., marked by ID tent no. 2 by Campbell
    14. Post-mortem prints, obtained by Robinson at OCME
    15. DNA swab, possible DNA swab from mouth of partial bottle of Seagram's 7 whiskey bottle located in front seat area of 2001 Chevy Impala
    16. DNA swab, from four cans of Budweiser and one can of Twisted Ice Tea, located on front passenger floorboard of 2001 Chevy Impala
    17. Anal swab, from OCME
    18. Oral swab, from OCME
    19. Right hand fingernails, from OCME
    20. Left hand fingernails, from OCME
    21. Scalp hair, from OCME
    22. Facial hair, from OCME
    23. Pubic hair, from OCME
    24. Blood DNA, from OCME
    25. Bag from right hand, from OCME
    26. Bag from right hand, from OCME
    27. Underwear, from OCME
    28. Contents of pocket, plastic bag containing keys, lighter, phone charger, etc., from OCME
    29. Fifty-five cents, in victim's pocket from OCME
    30. Shoes and socks, from OCME

31. Transport sheet, from OCME
32. Pants and belt, from OCME
33. Shirt, sack containing shirt from   OCME
34. Shirt, sack containing shirt from OCME
35. Coat, sack containing coat from OCME
36. Bullet, collected from right middle lung lobe, from   OCME
37. Bullet, collected from right clavicular region, from OCME
38. Fragment, collected from left forearm, from OCME

---

12. This is a list of evidence held by Tulsa Police Department under **Receipt No. BF2374.**

   1. .380 caliber handgun, Kel-Tec located in back of pocket of suspect's Jeans

   2. Winchester hollow-point jacket, located in item three

   3. Black .380 magazine, Kel-Tec, located in item one.

---

### *Analysis of Evidence:*

a) The firearm found in Plaintiff's possession was wrapped in a yellow/tannish cloth. Plaintiff had never physically touched this weapon and there are no fingerprints or DNA evidence on that weapon that would belong to Plaintiff.

b) Blood evidence on the passenger side of the decedent's vehicle can be analyzed for DNA. The fingerprints and DNA on the weapon will be consistent with the blood on the inside passenger door panel.

c) The biological evidence will conclusively establish that the two samples obtained from the items will reveal the same DNA profile and this profile will not be the same as the Plaintiff's.

---

Officer Tyler Turnbough took Plaintiff into custody at the scene in the early morning of March 14, 2011, finding a small firearm in his back pocket; the pistol having only two bullets in the magazine. (Tr. at 334 and 339). Biological evidence is available from these samples suitable for DNA testing. Forensic Pathologist Andrew Sibley testified at trial that he initially observed

that decedent had a gunshot wound in his upper chest region, but found two additional bullet wounds during the autopsy. (Tr. 346 and 348). The autopsy revealed that decedent had been shot on the upper left back, the bullet passing through the lungs and aorta. (Tr. 350- 351). The second gunshot went through the left front of the chest, through the clavicle, the collarbone, the esophagus, and came to rest under the right collarbone. (Tr. 352). Sibley remarked that the third shot was "fairly superficial" going through the collarbone and ultimately resting behind the right collarbone. *Id.* Sibley ruled the death homicide. (Tr. 354).

Senior Criminalist Terrance Higgs tested both the firearm and magazine found on Plaintiff, and the two spent .380 casings; Higgs' testing ultimately determined that the shell casings were fired from that gun found on Plaintiff. (Tr. 396 - 403). The weapon and ammunition are suitable for DNA testing that should be analyzed and compared to a known sample of Plaintiff's DNA.

Detective Vic Regalado observed decedent's body on the side of the vehicle which he alleged was consistent with having been in the passenger's seat. (Tr. at 405). Detective Regalado also observed what he believed to be blood stains and smears on the bottom portion of the door, along with the armrest of the door on the passenger's side. (Tr. at 408). [Exhibit 1]

Detective Mark Kennedy interviewed Plaintiff on March 14, 2011, at Tulsa Police Detective Division. On March 17, 2011, Det. Kennedy prepared a Supplemental Offense Report ("Kennedy's S.R."). This interview is crucial to understanding the alleged confession of Plaintiff that resulted from coercion and duress. Plaintiff states that a confession does not preclude a request for DNA testing of a grant of access to the evidence. Attached is an interview of Damon Redd with Detective Vic Regalado [Exhibit 2] which corroborates that Plaintiff did not shoot the decedent. It is alleged that Plaintiff told Det. Kennedy he had been informed that decedent had gone over to his sister's house earlier that night and pulled a pistol on his son. It was further alleged that Plaintiff

later pulled his vehicle over by decedent, who entered the van on the passenger side. Plaintiff states that the van belonged to the decedent not him. Plaintiff also states that the blood evidence on the passenger's door did not belong to decedent nor did it belong to him. The vehicle tag identification can be verified as belonging to decedent and not the Plaintiff.

> **Suppression of an eye witness demonstrating a reasonable probability that new evidence, DNA testing, would be sufficient to "undermine confidence" in the outcome of the proceeding.**

Damon Redd, an eyewitness, corroborates Petitioner's claim of factual innocence. According to Redd, one of the two suspects discharging firearms into decedent's vehicle was wearing a black jacket and the other was wearing a tank top. The individual identified as the one having braids is contradictory to Petitioner, while Petitioner had braids, his braids were longer than what was described by Redd. This information was obtained in an interview conducted by Detective Regalado, but Redd was not called as a witness to testify at trial. Petitioner did not fit the description of the individual shooting through the passenger side window of decedent's van. See [Exhibit 2 at 6].

V. **GROUND I:**

> **PLAINTIFF'S FOURTEENTH AMENDMENT RIGHT TO DUE PROCESS WAS VIOLATED FOR DEFENDANT'S REFUSAL TO PROVIDE ACCESS TO BIOLOGICAL EVIDENCE FOR DNA TESTING BECAUSE OKLAHOMA'S POST-CONVICTION DNA STATUTE PROVIDES AN UNCONSTITUTIONAL INADEQUACY TO ACCESS BIOLOGICAL EVIDENCE.**

Plaintiff seeks forensic "DNA" deoxyribonucleic acid testing of biological material secured in the investigation, that was not tested, and evidence previously tested under 22 O.S. 2013

§1373.[2] Plaintiff states he is seeking DNA testing to establish that he is "factually innocent" with new evidence. The Plaintiff is eligible to seek DNA testing under 22 O.S. § 1373.2 et seq. but Oklahoma's post-conviction DNA statute is unconstitutional because it provides an unconstitutional inadequacy to access biological evidence.

The items that Plaintiff seeks for testing are in the custody of the Defendant with the chain of custody being sufficient. Plaintiff argues that his Fourteenth Amendment rights are being violated by the Defendant not providing access to biological material. 22 O.S.2013 § 1373.1(1) under the "Post-Conviction DNA Act" defines the term ***"Biological material"*** as follows:

> ***"Biological material"*** means the contents of a sexual assault evidence collection kit **as well as any item** that contains or includes blood, semen, hair, saliva, skin tissue, fingernail scrapings or parings, bone, bodily fluids or other identifiable biological material that was collected as part of the criminal investigation or may reasonably be used to incriminate or exculpate any person for an offense and that ***may be suitable for forensic DNA testing***. This definition applies whether the material was catalogued separately including, but not limited to, on a swab, a slide or ***on any other evidence***;

Plaintiff's challenge is attacking the constitutionality of Oklahoma's post-conviction DNA testing statutes and the adequacy of access to biological material. See Okla. Stat. tit. 22 §§ 1373-1373.7. See *Skinner v. Switzer*, 562 U.S. 521 (2011). Plaintiff states he is eligible to petition for DNA testing which raises constitutional concerns to Oklahoma's DNA testing statute under 22 O.S.2013 § 1373.2 which provides:

**Eligibility and Procedures for Post-Conviction DNA Testing:**

A.  Notwithstanding any other provision of law concerning post-conviction relief, a person convicted of a violent felony crime or who has received a sentence of twenty-five (25) years or more and who asserts that he or she did not commit such crime may file a motion in the sentencing court requesting forensic DNA testing of any biological material secured in the

---

[2] "Post-Conviction DNA Act."

        investigation or prosecution attendant to the challenged conviction. Persons eligible for testing shall include any and all of the following:

        1.    Persons currently incarcerated, civilly committed, on parole or probation or subject to sex offender registration;

        2.    Persons convicted on a plea of not guilty, guilty or nolo contendere;

        3.    Persons deemed to have provided a confession or admission related to the crime, either before or after conviction of the crime; and

        4.    Persons who have discharged the sentence for which the person was convicted.

B.    A convicted person may request forensic DNA testing of any biological material secured in the investigation or prosecution attendant to the conviction that:

        1.    Was not previously subjected to DNA testing; or

        2.    Although previously subjected to DNA testing, can be subjected to testing with newer testing techniques that provide a reasonable likelihood of results that are more accurate and probative than the results of the previous DNA test.

C.    The motion requesting forensic DNA testing shall be accompanied by an affidavit sworn to by the convicted person containing statements of fact in support of the motion.

D.    Upon receipt of the motion requesting forensic DNA testing, the sentencing court shall provide a copy of the motion to the attorney representing the state and require the attorney for the state to file a response within sixty (60) days of receipt of service or longer, upon good cause shown. The response shall include an inventory of all the evidence related to the case, including the custodian of such evidence.

E.    A guardian of a convicted person may submit motions for the convicted person under the provisions of this act and shall be entitled to counsel as otherwise provided to a convicted person pursuant to this act.

Plaintiff asserts that because 22 O.S.2013 § 1373.2 which establishes eligibility for DNA testing and § 1373.2 (A)(2) and (3) establish the following "(2) Persons convicted on a plea of not guilty, guilty or nolo contendere; and (3) Persons deemed to have provided a confession or

admission related to the crime, either before or after conviction of the crime…." Plaintiff argues that 22 O.S. § 1373.4 creates an arbitrary statutory scheme which provides an unconstitutional discretionary mechanism rendering the constitutional inadequacy to access biological material suitable for DNA testing. The language under § 1373.4 (A) (1-5) provides:

A. After the motion requesting forensic DNA testing and subsequent response have been filed, the sentencing court shall hold a hearing to determine whether DNA forensic testing will be ordered. A court shall order DNA testing only if the court finds:

1. A reasonable probability that the Plaintiff would not have been convicted if favorable results had been obtained through DNA testing at the time of the original prosecution;

2. The request for DNA testing is made to demonstrate the innocence of the convicted person and is not made to unreasonably delay the execution of the sentence or the administration of justice;

3. One or more of the items of evidence the convicted person seeks to have tested still exists;

4. The evidence to be tested was secured in relation to the challenged conviction and either was not previously subject to DNA testing or, if previously tested for DNA, the evidence can be subjected to additional DNA testing that will provide a reasonable likelihood of more probative results; and

5. The chain of custody of the evidence to be tested is sufficient to establish that the evidence has not been substituted, tampered with, replaced or altered in any material respect or, if the chain of custody does not establish the integrity of the evidence, the testing itself has the potential to establish the integrity of the evidence. For purposes of this act, evidence that has been in the custody of law enforcement, other government officials or a public or private hospital shall be presumed to satisfy the chain-of-custody requirement of this subsection absent specific evidence of material tampering, replacement or alteration.

State law is inadequate to provide equal protection under the law to Defendants seeking DNA testing because of the ambiguity in the statutory scheme. Plaintiff's request under § 1373.4

(A) (1) requires a finding that a reasonable probability that the Movant would not have been convicted if favorable results had been obtained through DNA testing during the original prosecution which is an unconstitutional deprivation to access biological material to prove a persons' innocence with new evidence. A reasonable probability as defined in *United States v. Bagley*, 473 US 667, 105 (1985), as evidence sufficient to "undermine confidence" in the outcome of the proceeding. While favorable results of DNA would alter a jury's determination it also questions the charging power of the State which is fundamental establishing that the state suppressed exculpatory evidence. The charging power of the State is so rooted in the Nation's history and traditions as to be fundamental.

Further, to show entitlement to relief, Plaintiff must first demonstrate that state law created a liberty interest in demonstrating innocence with new evidence. See *Dist. Attorney's Office for Third Judicial Dist. v. Osborne*, 557 U.S. 52, 68 (2009). A liberty interest has been established under 22 O.S. § 1373.5(A) as "it allows for the vacation of a conviction, or other appropriate relief, upon a showing of favorable DNA test results" because this statute creates a liberty interest in demonstrating innocence with new evidence. *Osborne*, 557 U.S. at 68. See *Wilkinson v. Dotson*, 544 U.S. 74 (2005). Plaintiff is not attacking his conviction, only the inadequacy of access to DNA evidence to demonstrate his innocence with new evidence. Further, discussing the history and advancements in DNA testing Plaintiff states:

### Cybergenetics' TrueAllele computer analysis of complex DNA

Plaintiff states this method of analyzing evidence is so accurate that it overcomes the human limitations of ***"inconclusive"*** methods. TrueAllele objectively examines low-level, degraded, touch and mixed DNA samples to calculate match association. The software compares evidence with evidence and separates relatives from mixtures. This technology and the testing

techniques are reliable and accurate to separate any combination of mixtures. This testing follows the language used in 22 O.S. 2013 § 1373.2(B)(2). This method provides an accurate technique for complex DNA testing.

### *Touch DNA a Technique*

The touch DNA method is used in analyzing skin cells left behind when assailants touch victims, weapons or ***anything else at a crime scene***. Humans shed tens of thousands of skin cells each day. These cells are transferred to every surface our skin contacts, i.e. cellular telephones, gun grips, eating utensils, steering wheels, etc. Touch DNA is now low copy number DNA, which allows a very small amount of DNA to be analyzed, from as little as **5 to 20 cells**. The small amount of starting DNA in LCN samples requires many more cycles of amplification. This establishes more accuracy and reliability than previous testing techniques. In a major advance, the analysis of DNA has evolved from a laborious process taking weeks or even months to a procedure that can be completed in a matter of days. DNA technology is constantly evolving through new applications and innovations. Forensic scientists are combining advances in miniaturization and microchip technologies with well-established techniques of forensic DNA analysis.

**VI.     RELIEF REQUESTED**

Plaintiff requests injunctive relief to access the evidence sought by transferring the chain of custody to the "DNA reference lab" at 5819 NW Loop 410, San Antonio, TX 78238 and delivered to Dr. Salih. After testing is complete custody of the evidence will be transferred back to the current custodian. This relief should be granted without delay and Plaintiff can provide chain of custody for transfer of evidence.

**VII.    EXHAUSTION OF STATE COURT REMEDIES**

Plaintiff has sought relief in the State Courts with that relief being denied. No other remedy exists at law to access the biological evidence.

**VIII.   CERTIFICATION AND CLOSING**

I certify to the best of my knowledge, information, and belief this Complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the Complaint otherwise complies with the requirements of Rule 11.

Respectfully Submitted,

/s/ DEBRA K. HAMPTON
DEBRA K. HAMPTON, OBA # 13621
Hampton Law Office, PLLC
3126 S. Blvd., # 304
Edmond, OK 73013
(405) 250-0966
(866) 251-4898 (fax)
hamptonlaw@cox.net
Attorney for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that on this 17th day of January, 2020, I served the attached document by mailing to the Plaintiff as he is not registered participants of the ECF System:

JERROD D. HUEY, # 276869
NFCC
1605 East Main
Sayre, OK 73662

/s/ DEBRA K. HAMPTON
DEBRA K. HAMPTON