UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| JERROD D. HUEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 20-CV-0021-CVE-FHM |
| | ) | |
| STEVE KUNZWEILER, | ) | |
| District Attorney for Tulsa County, and | ) | |
| State of Oklahoma, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Plaintiff Jerrod Huey, a state inmate appearing through counsel, commenced this action on January 17, 2020, by filing a 42 U.S.C. § 1983 civil rights complaint (Dkt. # 3) against defendant Steve Kunzweiler, the district attorney for Tulsa County. Plaintiff claims defendant violated his Fourteenth Amendment right to due process by refusing his request for access to evidence currently held by the Tulsa Police Department. Plaintiff seeks an injunction ordering defendant to transfer certain evidentiary items to an independent laboratory for DNA testing. Plaintiff alleges these items, if tested with new techniques, would reveal DNA evidence proving that he is innocent of the crimes for which he was convicted. For the reasons discussed below, the Court finds that the complaint shall be dismissed without prejudice, in part, for lack of jurisdiction and, in part, for failure to state a claim on which relief may be granted.

**I.  Screening and dismissal standard**

Because plaintiff is currently incarcerated and "seeks redress from a . . . [an] officer or employee of a governmental entity," his complaint is subject to screening under the Prison Litigation

Reform Act (PLRA). 28 U.S.C. § 1915A(a). On review of the complaint, the Court must "identify any cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." Id. § 1915A(b). Section 1915A(a)'s screening requirement is similar to the screening requirement for complaints filed by litigants proceeding in forma pauperis. See 28 U.S.C. § 1915(e)(2)(B). But the PLRA screening provision applies to all civil actions filed by prisoners who seek redress from a governmental entity, officer, or employee, "without regard to their fee status." Plunk v. Givens, 234 F.3d 1128, 1129 (10th Cir. 2000).

In determining whether dismissal is appropriate, the Court accepts as true plaintiff's factual allegations, construes reasonable inferences therefrom in plaintiff's favor, and disregards legal conclusions that are devoid of supporting facts. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Dismissal for failure to state a claim is appropriate "when the allegations in a complaint, however true, could not raise a [plausible] claim of entitlement to relief." Bell Atl. Corp, 550 U.S. at 558. In addition, because federal courts are courts of limited jurisdiction, this Court has an independent duty to determine whether plaintiff has alleged sufficient facts to establish subject-matter jurisdiction. Henderson ex rel. Henderson v. Shinseki, 562 U.S. 428, 434 (2011); Rice v. Office of Servicemembers' Group Life Ins., 260 F.3d 1240, 1244-45 (10th Cir. 2001).

I. **Allegations in the complaint**[1]

Plaintiff was charged by information in the District Court of Tulsa County, Case No. CF-2011-1026, with first degree murder and unlawful possession of a firearm. Dkt. # 3, at 2. The State presented evidence at trial establishing that plaintiff shot and killed Johnny Dean on March 14, 2011. Id. at 3. Dean's autopsy revealed that he had three gunshot wounds and that the third wound was "fairly superficial." Id. at 7. Plaintiff was arrested at the scene of the shooting with a firearm in the back pocket of his jeans. Id. at 6. Inside the firearm was a black .380 magazine containing two bullets. Id. Terrance Higgs testified at trial that he tested the firearm and magazine and that two spent .380 caliber shell casings found at the crime scene, near the victim's minivan, had been fired from the firearm that was found in plaintiff's pocket. Id. at 3, 7. During his post-arrest interview, plaintiff confessed to shooting Dean. Id. at 7.

At the conclusion of the trial, the jury found plaintiff guilty as charged and fixed punishment at life imprisonment, with the possibility of parole, for the murder conviction and five years' imprisonment for the firearm conviction. Dkt. # 3, at 2. The trial court sentenced plaintiff accordingly and ordered the sentences to be served consecutively. Id. Plaintiff filed a direct appeal with the Oklahoma Court of Criminal Appeals (OCCA), in Case No. F-2012-189. Id. at 2-3. The OCCA affirmed his convictions and sentences in an unpublished opinion filed August 2, 2013. Id. at 3. Plaintiff subsequently sought federal habeas relief in this Court by filing a 28 U.S.C. § 2254 petition for a writ of habeas corpus in Case No. 14-CV-344-TCK-PJC. Dkt. # 3, at 1. This court

---

[1] Plaintiff's complaint is not well-written and, at times, is difficult to follow. Dkt. # 3, generally. Because plaintiff appears through counsel, the Court will not apply the rule of liberal construction that applies to pleadings filed by pro se litigants. See Erickson v. Pardus, 551 U.S. 89, 94 (2007). But, as in any civil case, the Court must construe the complaint "so as to do justice." FED. R. CIV. P. 8(e).

dismissed the petition, finding that plaintiff's habeas claims were unexhausted. See Dkt. # 8, N.D. Okla. Case No. 14-CV-344-TCK-PJC (Oct. 29, 2014).

On December 13, 2018, plaintiff filed a motion in the District Court of Tulsa County, seeking DNA testing of certain items found at the crime scene pursuant to Oklahoma's Postconviction DNA Act, OKLA. STAT. tit. 22, § 1373.1-1373.9.[2] See Docket Sheet, State v. Huey, No. CF-2011-1026, http://www.oscn.net/GetInformation.aspx?db=tulsa&number=CF-2011-1026&cmid=2406559, last visited Mar. 17, 2020. Section 1373.2 of Oklahoma's Postconviction DNA Act provides that "a person convicted of a violent felony crime or who has received a sentence of twenty-five (25) years or more and who asserts that he or she did not commit such crime may file a motion in the sentencing court requesting forensic DNA testing of any biological material secured in the investigation or prosecution attendant to the challenged conviction." Dkt. # 3, at 9-10 (quoting OKLA. STAT. tit. 22, § 1373.2(A)). Those who are eligible to request DNA testing include:

1. Persons currently incarcerated, civilly committed, on parole or probation or subject to sex offender registration;

2. Persons convicted on a plea of not guilty, guilty or nolo contendere;

3. Persons deemed to have provided a confession or admission related to the crime, either before or after conviction of the crime; and

4. Persons who have discharged the sentence for which the person was convicted.

---

[2] Plaintiff makes a vague reference to this motion, but provides no specific case information. See Dkt. # 3, at 14 ("Plaintiff has sought relief in the State Courts with that relief being denied."). This Court may, however, take judicial notice of the public docket sheet in plaintiff's state court case and of documents filed in that case, including his motion and the state courts' rulings on that motion. See St. Louis Baptist Temple, Inc. v. FDIC, 605 F.2d 1169, 1172 (10th Cir. 1979).

4

Dkt. # 3, at 10 (quoting OKLA. STAT. tit. 22, § 1373.2(A)).  A convicted person may request DNA testing of biological material if the material (1) was not previously subjected to DNA testing or (2) was previously tested but "can be subjected to testing with newer testing techniques that provide a reasonable likelihood of results that are more accurate and probative than the results of the previous DNA test."  Dkt. # 3, at 10 (quoting OKLA. STAT. tit. 22, § 1373.2(B)).  The remainder of § 1373.2 sets forth procedures for filing a motion for DNA testing and requesting a response from the State.  Id. at 10.

Section 1373.4(A) guides the state district court's review of a motion requesting DNA testing.  That section provides that the "court shall order DNA testing only if the court finds:

1. A reasonable probability that the [movant] would not have been convicted if favorable results had been obtained through DNA testing at the time of the original prosecution;

2. The request for DNA testing is made to demonstrate the innocence of the convicted person and is not made to unreasonably delay the execution of the sentence or the administration of justice;

3. One or more of the items of evidence the convicted person seeks to have tested still exists;

4. The evidence to be tested was secured in relation to the challenged conviction or was not previously subjected to DNA testing or, if previously tested for DNA, the evidence can be subjected to additional DNA testing that will provide a reasonable likelihood of more probative results; and

5. The chain of custody of the evidence to be tested is sufficient to establish that the evidence has not been substituted, tampered with, replaced or altered in any material respect or, if the chain of custody does not establish the integrity of the evidence, the testing itself has the potential to established the integrity of the evidence.  For purposes of this act, evidence that has been in the custody of law enforcement, other government officials or a public or private hospital shall be presumed to satisfy the chain-of-custody requirement of this subsection absent specific evidence of material tampering, replacement or alteration.

Dkt. # 3, at 11 (quoting OKLA. STAT. tit. 22, § 1373.4(A)).

After receiving a response from the State, the state district court denied plaintiff's motion for postconviction DNA testing. See Order Nunc Pro Tunc (May 10, 2019), State v. Huey, No. CF-2011-1026, http://www.oscn.net/dockets/GetCaseInformation.aspx?db=tulsa&number=CF-2011-1026&cmid=2406559, last visited March 17, 2020. The court found, in light of overwhelming evidence and plaintiff's confession, that plaintiff failed to demonstrate a reasonable probability that he would not have been convicted if favorable results had been obtained through DNA testing. Id. Plaintiff timely appealed the state district court's ruling, and the OCCA affirmed the state district court's order denying his motion. See Opinion (Dec. 4, 2019), Huey v. State, No. PC-2019-446, http://www.oscn.net/dockets/GetCaseInformation.aspx?db=appellate&number=PC-2019-446&cmid=126466, last visited March 17, 2020.

Plaintiff filed the instant civil rights complaint on January 17, 2020. Dkt. # 3, at 1. Plaintiff seeks "an injunction requiring [defendant] to release the chain of custody of biological material to an accredited laboratory in San Antonio, Texas, that was secured in an investigation for testing." Dkt. # 3, at 2. In support of his request for injunctive relief, plaintiff states "that Oklahoma's Post-Conviction DNA testing statute is unconstitutional providing a constitutional inadequacy to access biological material to prove [his] innocence through new evidence." Id. Plaintiff alleges that he "meets the statutory requirement to seek DNA testing under 22 O.S. 2013 § 1373.2(A)." Id. He further alleges that he is "factually innocent" and that "DNA testing of biological evidence that [he] seeks would conclusively establish" his innocence. Id. at 3.

Plaintiff seeks DNA testing of (1) a firearm found in his possession, (2) a Winchester hollow-point jacket, (3) a Black .380 magazine, Kel-Tec, that was found in the firearm, (4) a blood swab

taken from inside [the victim's] van on the front passenger door, and (5) "Blood DNA, from OCME (control sample of decedent)." Dkt. # 3, at 3. Plaintiff alleges "that any DNA collected from the firearm found on his person would be the same DNA as the blood collected from the passenger door of the victim's van. Dkt. # 3, at 4; see also Dkt. # 3-1 (photographs of victim's van). Plaintiff further alleges that the items he seeks for DNA testing are in defendant's custody and he includes, within his complaint, a list of evidence "demonstrating the chain of custody is sufficient for DNA testing." Dkt. # 3, at 5-6, 9. Plaintiff alleges the firearm and ammunition he requests access to "are suitable for DNA testing that should be analyzed and compared to a known sample of [his] DNA." Id. at 7.

Plaintiff alleges "[a] willful suppression of evidence occurred regarding the analysis of blood evidence when the [S]tate produced no STR frequency tables or copies of any allelic frequency tables relied upon in making statistical estimates." Dkt. # 3, at 4. Further, he alleges, the State suppressed evidence by failing to provide (1) "Mitochondrial Data," (2) "Data Interpretation Guidelines," (3) "mitochondrial DNA statistical references for allowing an independent expert to analyze the laboratory results alleged to have been determined," (4) a "[r]eport of matches between samples in this case (reference and evidentiary) and any laboratory personnel or profiles prepared by the laboratory," (5) "documents regarding CODIS/NDIS uploads, keyboard searches, and related reports," and (6) "documents regarding state/county/agency or other local database uploads and related reports." Id. Plaintiff further alleges that the State suppressed eyewitness testimony by failing to call a witness, Damon Redd, at trial. Id. at 8. Plaintiff submitted with his complaint a transcript of Redd's interview with a police detective. Dkt. # 3-2. Plaintiff alleges that Redd's statements corroborate that plaintiff "did not shoot the decedent." Dkt. # 3, at 7-8.

7

Based on the allegations in his complaint, plaintiff claims that defendant violated his Fourteenth Amendment right to due process by refusing "to provide access to biological evidence for DNA testing because Oklahoma's post-conviction DNA statute provides an unconstitutional inadequacy to access biological evidence." Dkt. # 3, at 8 (bold-face type and full capitalization omitted). As relief for this alleged Fourteenth Amendment violation, plaintiff seeks an injunction requiring defendant to "transfer[] the chain of custody to the 'DNA reference lab' at 5819 NW Loop 410, San Antonio, TX 78238 and deliver[] to Dr. Salih" the evidentiary items identified in his complaint. Dkt. # 3, at 13.

### III. Analysis

For three reasons, the Court finds that the complaint shall be dismissed.

#### A. Challenge to state court judgment

First, while plaintiff purports to bring this action to challenge the constitutionality of Oklahoma's Postconviction DNA Act, Dkt. # 3, at 2, 9, the complaint could be construed, in part, as instead challenging the state court decisions denying his motion for postconviction DNA testing. For example, plaintiff extensively discusses the facts underlying his convictions, alleges he is factually innocent, and alleges that the "chain of custody is sufficient for DNA testing." Dkt. # 3, at 3-8. These facts and allegations were undoubtedly relevant to the motion for postconviction DNA testing that plaintiff presented in state court. See OKLA. STAT. tit. 22, § 1373.4(A) (identifying findings state district court must make to grant a movant's request for postconviction DNA testing). But they have little or no relevance to the Fourteenth Amendment claim he purports to present in this civil rights action.

To the extent plaintiff includes these allegations in his complaint to persuade this Court to review and overturn the state court rulings denying his request for relief under the Postconviction DNA Act, his complaint must be dismissed, in part, under the Rooker-Feldman doctrine.[3] Skinner v. Switzer, 562 U.S. 521, 532 (2011); see also Erlandson v. Northglenn Mun. Ct., 528 F.3d 785, 789 (10th Cir. 2008) ("[A] complaint filed in a federal district court that seeks review and reversal of a state-court judgment is properly dismissed under Rooker-Feldman."). As previously discussed, the state district court determined that plaintiff failed to make the necessary showings under OKLA. STAT. tit. 22, § 1373.4(A) to obtain postconviction DNA testing. In this action, plaintiff nevertheless asks this Court to require defendant to provide him access to the same evidentiary items he sought access to through the motion he presented in state court. But the Rooker-Feldman doctrine bars "state-court losers" from "inviting district court review and rejection of the state court's judgments." Skinner, 562 U.S. at 532. And, when Rooker-Feldman's bar applies, the federal district court must dismiss the complaint for lack of subject-matter jurisdiction because only the United States Supreme Court has authority to review state-court judgments. Skinner, 562 U.S. at 532.

Thus, to the extent plaintiff urges this Court to review and reverse the state court decisions denying his request for access to certain evidentiary items for DNA testing, Rooker-Feldman bars his claim. As a result, the Court finds the complaint must be dismissed, in part, for lack of subject-matter jurisdiction.

---

[3] D.C. Court of Appeals v. Feldman, 460 U.S. 462 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923).

### B. Challenge based on alleged suppression of evidence

Plaintiff's complaint could also be construed, in part, as attempting to assert a violation of his due process rights as interpreted in Brady v. Maryland, 373 U.S. 83 (1963). Specifically, plaintiff alleges that the State suppressed evidence "regarding the analysis of blood evidence," failed to provide him with certain reports related to DNA testing, and suppressed eyewitness testimony by failing to present testimony at trial from Damon Redd. Dkt. # 3, at 4, 8. Plaintiff asserts these allegations in the context of his complaints about his inability to access certain evidentiary items for postconviction DNA testing. But states have no "obligation to comply with the principles of Brady . . . after the defendant [is] convicted and the case [is] closed." Dist. Attorney's Office for Third Judicial Dist. v. Osborne, 557 U.S. 52, 68 (2009); see also Pickens v. Kunzweiler, No. 15-CV-504-JHP-PJC, 2016 WL 1651821, at *3 (N.D. Okla. Apr. 25, 2016) (unpublished)[4] (noting that "Brady is inapplicable to situations where an individual seeks access to DNA evidence after conviction"). As this court explained in Pickens, "[p]laintiff's remedy for any alleged Brady violation is provided by habeas corpus," not by a civil rights action under § 1983. Pickens, 2016 WL 1651821, at *3. Thus, to the extent plaintiff's complaint could be construed as asserting a Brady violation based on the alleged suppression of evidence, the Court finds that the complaint must be dismissed, in part, for failure to state a claim upon which relief may be granted.

### C. Challenge to constitutionality of Postconviction DNA Act

Finally, plaintiff claims that defendant violated his Fourteenth Amendment right to due process by "refus[ing] to provide access to biological evidence for DNA testing." Dkt. # 3, at 8.

---

[4] The Court cites this unpublished decision, and other unpublished decisions herein, as persuasive rather than precedential. See Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

Plaintiff's arguments are not entirely clear. Plaintiff asserts that he is eligible to seek DNA testing, under OKLA. STAT. tit. 22, § 1373.2. Dkt. # 3, at 9-10. He then argues that "§ 1373.4 creates an arbitrary statutory scheme which provides an unconstitutional discretionary mechanism rendering the constitutional inadequacy to access biological material suitable for DNA testing." Dkt. # 3, at 11. He further argues that "State law is inadequate to provide equal protection under the law to [d]efendants seeking DNA testing because of the ambiguity in the statutory scheme." Id. at 11. He appears to argue that the State enacted an "arbitrary statutory scheme" because it permits eligible offenders to seek DNA testing, but then requires the state district court to deny relief unless it finds "[a] reasonable probability that the [offender] would not have been convicted if favorable results had been obtained through DNA testing during the original prosecution." Dkt. # 3, at 11-12. Finally, plaintiff states:

> Further, to show entitlement to relief, [p]laintiff must first demonstrate that state law created a liberty interest in demonstrating innocence with new evidence. See Dist. Attorney's Office for Third Judicial Dist. v. Osborne, 557 U.S. 52, 68 (2009). A liberty interest has been established under 22 O.S. § 1373.5(A) as 'it allows for the vacation of a conviction, or other appropriate relief, upon a showing of favorable DNA test results' because this statute creates a liberty interest in demonstrating innocence with new evidence. Osborne, 557 U.S. at 68. See Wilkinson v. Dotson, 544 U.S. 74 (2005). Plaintiff is not attacking his conviction, only the inadequacy of access to DNA evidence to demonstrate his innocence with new evidence.

Dkt. # 3, at 12.

Even fairly construed, the Court finds that the complaint fails to state a plausible due process claim. First, plaintiff's citations to Dotson and Osborne do not appear to support his claim. Stating that it was "adhering" to its decision in Dotson, the Supreme Court held in Skinner "that a postconviction claim for DNA testing is properly pursued" through a 42 U.S.C. § 1983 civil rights action, rather than a 28 U.S.C. § 2254 habeas corpus action, because a request for post-conviction

11

DNA testing neither necessarily implies the unlawfulness of the State's custody nor seeks immediate or speedier release from confinement. Skinner, 562 U.S. at 525. But the Skinner Court emphasized that its "decision in Osborne severely limits the federal action a state prisoner may bring for DNA testing." Skinner, 562 U.S. at 525. Significantly, "Osborne rejected the extension of substantive due process to this area, and left slim room for the prisoner to show that the governing state law denies him procedural due process." Skinner, 562 U.S. at 525 (internal citations omitted) (citing Osborne, 557 U.S. at 71-72.); see also Osborne, 557 U.S. at 69 ("Federal courts may upset a State's postconviction relief procedures only if they are fundamentally inadequate to vindicate the substantive rights provided."). Accordingly, to the extent plaintiff asserts a denial of his substantive due process rights, Osborne forecloses, rather than supports, his claim. See Pickens, 2016 WL 1651821, at *3 (discussing Osborne and stating, "The Supreme Court has rejected the idea that individuals who have been convicted of crimes have a substantive due process right to access DNA evidence.").

To the extent plaintiff asserts a procedural due process violation, the Court finds his allegations and arguments insufficient to state a plausible claim for relief. As relevant here, to state a procedural due process claim, plaintiff must allege facts demonstrating (1) that he has a liberty interest created by state law, and (2) that the State failed to afford him the appropriate level of process before depriving him of that interest. Al-Turki v. Tomsic, 926 F.3d 610, 614 (10th Cir. 2019). Plaintiff plausibly alleges that the Postconviction DNA creates a liberty interest in access to DNA evidence. Dkt. # 3, at 12; see Pickens, 2016 WL 1651821, at *4 (finding the Postconviction DNA Act "sufficient to create a liberty interest in demonstrating innocence with new evidence"). But this court in Pickens declined to "find that Oklahoma's procedures are fundamentally inadequate

to vindicate the liberty interest in demonstrating innocence with new evidence." 2016 WL 1651821, at *4. The court reached that conclusion after considering the Act's eligibility requirements set forth in OKLA. STAT. tit. 22, § 1373.2. See id.

Here, plaintiff appears to attack the statutory requirement that the state district court grant a motion for postconviction DNA testing only if it finds, inter alia, "a reasonable probability that the [movant] would not have been convicted if favorable results had been obtained through DNA testing at the time of the original prosecution." Dkt. # 3, at 11-12 (quoting OKLA. STAT. tit. 22, § 1373.4(A)(1)). In Pickens, the court did not consider that specific requirement, but another federal district court in Oklahoma comprehensively reviewed the Postconviction DNA Act and, consistent with Pickens, concluded that "Oklahoma's procedures are on par with the procedures found to pass constitutional muster in Osborne." Neal v. Prater, No. CIV-19-277-SLP, 2019 WL 6045586, at *4 (W.D. Okla. Nov. 15, 2019). The plaintiff in Neal made an argument very similar to the one plaintiff appears to make here. In Neal, the plaintiff argued that "limiting access to DNA evidence [based on a party's failure to meet the requirements of § 1373.4(A)] when [he] meets the threshold requirements [for postconviction DNA testing included in § 1373.2] is an unconstitutional denial of due process." 2019 WL 6045586, at * 3 (alterations in original). The district court in Neal found that argument "fail[ed] to state a claim based in procedural due process," and noted that "[c]learing the bar set by Osborne is difficult." Neal, 2019 WL 6045586, at * 4.

The Court agrees that Osborne sets a high bar for a procedural due process claim, and finds that plaintiff fails to overcome it. Significantly, in Osborne, the Supreme Court upheld Alaska's procedures for seeking postconviction DNA testing, noting that Alaska's laws exempts claims for postconviction DNA testing from applicable time limits and permits discovery, but places other

13

limits on eligibility for relief, including, in relevant part, that the movant make a "sufficiently compelling showing of new evidence that establishes innocence." 557 U.S. at 69-70. Similar to Alaska's procedures, Oklahoma's procedures require a sufficiently compelling showing that DNA testing will establish innocence—namely, a reasonable probability that the outcome of trial would have been different with favorable DNA evidence. And, contrary to plaintiff's apparent position, "plac[ing] limits on an offender's access to DNA evidence," Pickens, 2016 WL 1651821, at *4, does not make Oklahoma's Postconviction DNA Act "fundamentally inadequate to vindicate substantive rights," Neal, 2019 WL 6045586, at * 3. Accordingly, in light of Osborne, Pickens and Neal, the Court finds that plaintiff fails to state a plausible procedural due process claim.

Because plaintiff fails to allege a plausible Fourteenth Amendment due process claim against defendant, the Court finds the complaint must be dismissed, in part, for failure to state a claim upon which relief may be granted.

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1. The complaint (Dkt. # 3) is **dismissed without prejudice**, in part, for lack of jurisdiction and, in part for failure to state a claim upon which relief may be granted.

2. This is a final order terminating this action.

3. A separate judgment shall be entered herewith.

**DATED** this 20th day of March, 2020.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE